UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW KOSWENDA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of ) <br> Social Security, ) <br> ) <br> Defendant. ) | No. 08 C 4732 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Matthew Koswenda, pursuant to 42 U.S.C. § 405(g), brought suit against Defendant, Michael Astrue, Commissioner of Social Security, seeking judicial review of the Social Security Administration's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d).

### BACKGROUND

Plaintiff filed an application for DIB on May 10, 2005, alleging that he became disabled on September 10, 2002. Plaintiff's "date last insured" was December 31, 2003. Plaintiff's claim was initially denied, and he filed a request for a rehearing. The Administrative Law Judge ("ALJ") held a hearing on October 11, 2007, and denied Plaintiff's application on January 11, 2008. The Appeals Council denied Plaintiff's Request for Review, leaving the ALJ's decision as the final decision of the Commissioner. The Appeals Council granted Plaintiff an extension of time to file a civil action; and on August 20, 2008, Plaintiff filed this case.

Plaintiff was fifty-six-years-old at the time his insured status expired. He had past work experience as an accountant and a facilities manager. Plaintiff claims his disability is due to a

mental impairment. Plaintiff began receiving psychiatric counseling in the 1980s to help come to terms with his son's autism. Plaintiff had few friends and did not get along with neighbors. According to Plaintiff's wife, he suffered from frequent panic attacks, became extremely anxiety-ridden over daily tasks and had an explosive temper. Plaintiff worked as a substitute teacher in 2002 but was admonished for sending students who annoyed him to the principal's office. He was told by the superintendent that he could no longer work as a substitute teacher because he had to get along with people. Plaintiff worked as an accountant for a prison but was fired due to verbal fights with other employees. Plaintiff testified that he could not perform a job, even if he did not have to be around people, because he was constantly nervous, felt agitated, became angry over minor things and felt like a zombie with his medication.

*Plaintiff's Medical Treatment Prior to December 31, 2003*

In October 1999, Plaintiff was evaluated by a doctor at Palos Psychiatric and Recovery Institute. He was diagnosed with depression and passive-aggressive personality. Plaintiff was next seen on June 25, 2001, at which time he indicated that he was "doing better." Plaintiff was a "house husband" and caring for the children. His depression was reported to have resolved.

On May 5, 2003, Dr. Li-Jun Huang reported that Plaintiff had a history of aggressiveness and irritability and was easily angered. Dr. Huang reported that Plaintiff's energy level and concentration were fine.

From June 1, 2001 until August 2003, Plaintiff received treatment from Dr. Joseph Kut. Dr. Kut opined that Plaintiff had a history of depression, had non-persecutory delusions, was passive aggressive, unsociable, irritable, quick tempered and tangential, and had fair insight and judgment. Dr. Kut diagnosed Dysthymia and passive-aggression. Plaintiff's medications

included Wellbutrin and Lexapro. He had tried Zoloft and Ritalin, Zyprexa, Celexa and Effexor; but they were ineffective.

Plaintiff received general medical care from WellGroup HealthPartners since at least 1998. In March 2000, Plaintiff complained of stress at home. He had problems sleeping and had chronic depression. In April 2001, he reported that he had been having problems with his wife and son. In July 2002, Plaintiff was reported to be essentially asymptomatic, except for his usual problems at home with his family. Plaintiff also reported that he had undergone surgery on his right knee many years before. In February 2003, Plaintiff complained of being very tired for the previous two months. He had gained weight and did not have an interest in things. He had a poor social life and had lost his job. In December 2003, Plaintiff complained of groin pain, a severe cough and fatigue for two weeks.

*Plaintiff's Medical Treatment After December 31, 2003*

In August 2004, Plaintiff complained of moderate pain in his right knee. The doctor ordered x-rays, which revealed soft-tissue calcification, narrowing and degenerative changes. Plaintiff was seen for knee pain in May 2005 and again in December 2005, at which time he was denied a disability sticker because he was exercising, walking and working. In March 2006, Plaintiff's wife reported that he had been "extremely catatonic" over the last three months and that his personality had completely changed. In October 2006, Plaintiff presented a list of complaints, including being very tired. He reported that he worked out daily with light weights and tai chi.

Dr. Clara T. Perez, M.D., a psychiatrist, first evaluated Plaintiff on February 25, 2005, and continued to see Plaintiff through October 2007. Dr. Perez diagnosed an explosive disorder,

a history of depression with narcissistic features, bipolar disorder, learning disability, sleep disorder, Post-Traumatic Stress Disorder, marital issues, and gastro-esophageal reflux disorder. Dr. Perez noted that Plaintiff suffered from depression and symptoms of low self worth, dysphoria and explosiveness despite treatment, erratic sleeping patterns and decreased energy resulting from his medication. Dr. Perez opined that Plaintiff had marked difficulties in social functioning and in maintaining concentration, persistence or pace.

Dr. Alan Jacobs, Ph.D., a licensed clinical psychologist, evaluated Plaintiff in September 2005. Dr. Jacobs reported that Plaintiff was pleasant, cooperative and polite. He diagnosed passive-aggressive personality disorder, rule out bipolar II disorder, history of alcohol abuse and marital and family problems.

Plaintiff saw Dr. Richard Crawford, M.D. from September 2005 through February 2006. Dr. Crawford noted that Plaintiff was obese and that his fatigue could be due to a combination of his depression, possible sleep apnea and obesity. Dr. Crawford also noted that Plaintiff had degenerative joint disease in his right knee.

Dr. Richard Feely, D.O. treated Plaintiff from June 2005 to February 2007. During this time, Plaintiff's diagnosis included sleep apnea, snoring, burping and, on a few occasions, fatigue. In February 2006, Dr. Feely indicated that Plaintiff had been diagnosed with depression in 2001 and major depression four months ago and that he was socially unable to work with people.

On September 28, 2005, Carl Hermsmeyer, Ph.D., a State Agency medical consultant, completed a psychiatric review technique form ("PRTF"), assessing Plaintiff through that date. Dr. Hermsmeyer concluded that Plaintiff met the "A" criteria for personality disorder and that he

4

had a substance addiction disorder. On March 12, 2006, David Gilliland, Psy.D., another State Agency psychologist, completed a PRTF covering the period of September 10, 2002 to March 12, 2002. Dr. Gilliland also concluded that Plaintiff met the "A" criteria for personality disorder and that he had a substance addiction disorder. Both Drs. Hermsmeyer and Gilliland opined that Plaintiff had mild restrictions in activities of daily living and moderate difficulties in social functioning and maintaining concentration, persistence and pace.

## LEGAL STANDARD

The findings of the Commissioner should be reversed only if it is not supported by substantial evidence or if it results from an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (*Lopez*). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Micus v. Bowen*, 979 F.2d 602, 604 (7th Cir. 1992). A reviewing court must conduct a "critical review of the evidence" but must not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Lopez*, 336 F.3d at 539. The Commissioner's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

## ANALYSIS

To be eligible for DIB, Plaintiff was required to prove that he became disabled prior to the expiration of his insured status on December 31, 2003. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). The determination of whether a claimant suffers from a disability as defined in the Social Security Act is conducted through a five-step inquiry, evaluated in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the

5

impairments listed by the Commissioner as conclusively disabling (*see* 20 C.F.R. § 404, Subpt. P, App.); (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). The claimant has the burden of proof for steps one through four; the Commissioner has the burden of proof for step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (*Clifford*).

At step one, the ALJ found that Plaintiff was not employed. At step two, the ALJ found that through his date last insured, Plaintiff was severely impaired in that he had personality disorder and affective mood disorder. However, at step three, the ALJ found that Plaintiff's impairments did not meet or exceed any of the listed impairments. At step four, the ALJ found that Plaintiff could not perform his past relevant work. However, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

Plaintiff raises several objections to the ALJ's decision. First, Plaintiff argues that at step five, the ALJ improperly formulated his residual functional capacity assessment ("RFC") based upon her own beliefs rather than upon supporting medical evidence. Plaintiff argues that after giving less than controlling weight to the opinions of Dr. Perez, Dr. Feely, the State Agency physicians, and the medical expert who testified, the ALJ improperly made an independent medical decision in determining Plaintiff's RFC.

As noted, the ALJ found that Plaintiff could perform medium work with no more than minimal interaction with supervisors, coworkers, or the general public. Contrary to Plaintiff's assertion, this finding was supported by substantial evidence. Specifically, the ALJ noted that

6

medical records through Plaintiff's date last insured state that Plaintiff was "basically asymptomatic except [for] his usual problems at home with his family." The ALJ found no evidence that Plaintiff's troubles at home prevented him from working. To the contrary, the ALJ noted that since Plaintiff's conditions were of very long standing, his long sustained work record showed that he had the ability to work despite his emotional difficulties.

Plaintiff next argues that the ALJ failed to properly weigh the testimony of Plaintiff's treating physicians, Dr. Perez and Dr. Feely. Plaintiff claims that the ALJ failed to specify what weight she gave those opinions and should have given them greater weight than she did. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (*Skarbek*). An ALJ who discounts a treating physician's medical opinion must "minimally articulate" her reasons. *Skarbek*, 390 F.3d at 504. Here, the ALJ stated that she "could not give controlling weight" to the opinion of Dr. Perez and [did] not give significant weight to the statement provided by Dr. Feely." With respect to Dr. Perez, the ALJ noted that "she did not begin treating [Plaintiff] until well after the relevant period and her assessment is . . . contradicted by more contemporary evidence." With respect to Dr. Feely, the ALJ noted that like Dr. Perez, Dr. Feely did not treat Plaintiff "until well after the date he was last insured." Additionally, the ALJ noted that Dr. Feely was not a specialist in mental health and did not support his statements with objective findings. Thus, the ALJ satisfied the standard of minimally articulating her reasons for affording these opinions less than controlling weight.

7

Plaintiff argues that the ALJ failed to note that the diagnoses contained in the opinions of Dr. Perez and Dr. Feely were also reflected in the records prior to Plaintiff's date last insured. Therefore, Plaintiff asserts, those opinions should have been given more weight. However, that Plaintiff had the same conditions both before and after his date last insured does not show that the severity of those conditions did not worsen over time. Neither Dr. Perez nor Dr. Feely purported to provide an opinion regarding Plaintiff's condition prior to his date last insured. Thus, the ALJ did not err in concluding that the opinions of Dr. Perez and Dr. Feely were not conclusive evidence of Plaintiff's condition before December 31, 2003.

Plaintiff next argues that the ALJ erred in rejecting the opinions of the State agency physician, Dr. Gilliland. The ALJ stated that she could not give controlling weight to these opinions because they were "based, explicitly, on evidence from well after the date last insured." However, as Plaintiff points out, Dr. Gilliland stated that his assessment was for the period from September 10, 2002 until March 12, 2006. Thus, Dr. Gilliland's report was relevant to Plaintiff's condition before his date last insured, December 31, 2003. Defendant argues that the ALJ was correct to discount Dr. Gilliland's report because the report referred to treatment notes only from after Plaintiff's date last insured. However, Gilliland's report, on its face, indicates that the doctor believed he had sufficient information to assess Plaintiff's condition going back to September 10, 2002. This medical determination should not have been dismissed by the ALJ. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 195) ("The question what stage a physical or

mental illness had probably reached some years before it was first diagnosed is a medical question"). At a minimum, the ALJ should have re-contacted Dr. Gilliland for clarification if she was unsure about the scope of his opinion. Therefore, rejection of Dr. Gilliland's opinion was error.

Plaintiff next argues that the ALJ erred in assessing Plaintiff's RFC. Specifically, Plaintiff argues the ALJ failed to consider Plaintiff's "mild limitations in his ability to maintain concentration, persistence or pace," his limitations related to fatigue and his obesity in assessing Plaintiff's RFC. With respect to fatigue, Defendant points out that Plaintiff's complaints were intermittent and that the majority occurred after his insured status expired. The ALJ noted that the record did not indicate that any period of fatigue lasted for twelve months nor that the fatigue ever interfered with the activities of daily living. With respect to his obesity, Plaintiff has not cited any evidence that would indicate that his weight significantly limited his ability to perform basic work activities. Thus, the ALJ did not err in her determination that Plaintiff was not significantly limited by fatigue during the relevant period or in her determination that Plaintiff's obesity was not severe.

With respect to Plaintiff's limitations in concentration, the ALJ found that Plaintiff had "mild limitations in his ability to maintain concentration, persistence or pace." Plaintiff argues that the ALJ failed to include this limitation in her questions to the vocational expert ("VE"). In assessing a claimant's RFC, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *SSR 9608p*. "The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*,

19 F.3d 329, 337 (7th Cir. 1994). Defendant does not dispute that this limitation was omitted from the ALJ's questions to the VE. Nor does he argue that the VE had access to this information through other sources. Rather, Defendant asserts that Plaintiff's claim that the additional limitation would change the RFC is speculation. This argument is not persuasive. It is not Plaintiff's burden to show that different questions to the VE would have resulted in a different RFC. Rather, an ALJ decision based on inaccurate hypothetical questions requires remand. *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). Defendant's next argument, that the evidence showed that Plaintiff's concentration was "fine," is also not persuasive. Although the ALJ cited evidence showing that Plaintiff's impairment in this area was not severe, she nonetheless found that Plaintiff had "mild limitations in his ability to maintain concentration, persistence or pace." This limitation, even though mild, should have been included in questions to the VE. Thus, the case will be remanded for further assessment of Plaintiff's RFC and consideration of whether Plaintiff is capable of performing work in the national economy.

Finally, Plaintiff argues that in holding that his impairments did not meet the requirements of Listing 12.04, the ALJ failed to consider whether Plaintiff met the "C" criteria of Listing 12.04. While the ALJ did not specifically discuss the "C" criteria of Listing 12.04, she did state that Plaintiff did not meet the criteria of Listing 12.04, which would include the "C" criteria. Furthermore, Plaintiff, who bears the burden at this stage, does not provide substantial evidence that he met the "C" criteria. Plaintiff's only evidence that he meets the "C" criteria is a report by Dr. Perez from 2007. The ALJ discounted this report because it was created well after Plaintiff's date last insured. Therefore, the ALJ committed no error with regard to considering the "C" criteria.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is denied; Plaintiff's motion for summary judgment is granted, and the case is remanded to the Commissioner for further proceedings in accordance with this Opinion.

Dated: April 2, 2009

JOHN W. DARRAH
United States District Court Judge